UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE HOSPITAL COMMITTEE FOR THE LIVERMORE-PLEASANTON AREAS *dba* VALLEYCARE HEALTH SYSTEM *aka* VALLEYCARE MEMORIAL HOSPITAL,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES E. JOHNSON, as Acting Secretary of the United States Department of Health and Human Services,<br><br>Defendant._____ / | No. C-09-1786 EMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket Nos. 30, 31)** |

Plaintiff the Hospital Committee for the Livermore-Pleasanton Areas has filed suit against Defendant Charles E. Johnson as Acting Secretary for the Department of Health & Human Services ("HHS"), asserting that an agent of the Department improperly reopened a decision that the Hospital was entitled to certain payments for the treatment of Medicare beneficiaries. According to the Hospital, the reopening regulations promulgated by the Secretary only allow for a reopening where there is good cause, which was lacking in the instant case. The agency disagrees. According to the agency, the good cause standard is not privately enforceable and, under the regulations, a decision whether to reopen is not appealable. Currently pending before the Court are the parties' cross-motions for summary judgment.

///

///

///

## I. FACTUAL & PROCEDURAL BACKGROUND[1]

A. Medicare and Review of Provider Claims

> The Medicare program, established by Title XVIII of the Social Security Act, provides payment for medical care for the aged and disabled. Eligible beneficiaries receive medical care from "providers," which are medical care facilities that have entered into agreements with the Secretary to furnish care, and the providers are then reimbursed by the Medicare program. Part A of the Medicare program authorizes payments for institutional care provided primarily on an inpatient basis. *See* 42 U.S.C. §§ 1395c-1395i-4. Part B of the program authorizes payments primarily for outpatient services and durable medical equipment. *See id.* §§ 1395j-1395w-4.

*Irvine Med. Ctr. v. Thompson*, 275 F.3d 823, 826 (9th Cir. 2002).

"The Centers for Medicare and Medicaid Services ('CMS') . . . is the component of the Department of Health and Human Services that administers the Medicare program for the Secretary." *Community Hosp. of the Monterey Peninsula v. Thompson*, 323 F.3d 782, 785 (9th Cir. 2003). CMS's procedure for reimbursement of providers involves multiple layers of review.

Initially, reimbursement to providers for services provided is made through private "fiscal intermediaries" with which CMS contracts. *See United States v. Lahey Clinic Hosp., Inc.*, 399 F.3d 1, 4 (1st Cir. 2005) (noting that "[t]he Secretary contracts with 'fiscal intermediaries' (FIs) and 'carriers' to make initial reimbursement determinations and to administer payments"; adding that "[t]hese entities are often private insurance companies"). The fiscal intermediary, or "FI," makes what is known as the "initial determination." *See* 42 U.S.C. § 1395ff(a)(1); 42 C.F.R. §§ 405.920, 405.924(b).

A provider who is dissatisfied with the initial determination may request that the FI perform a "redetermination" of the claim. *See* 42 U.S.C. § 1395ff(a)(3); 42 C.F.R. § 405.940.

If the provider is dissatisfied with the redetermination, then it may seek a "reconsideration" from a separate Medicare contractor referred to as a Qualified Independent Contractor ("QIC"). *See* 42 U.S.C. § 1395ff(b)(1), (c); 42 C.F.R. § 405.960.

---

[1] The agency has made various objections as to how the Hospital has characterized evidence. Those objections are essentially moot because the Court interprets documents for itself.

2

If the provider is still dissatisfied, then it may appeal to an administrative law judge ("ALJ") and thereafter the Medicare Appeals Council ("MAC"). *See* 42 U.S.C. § 1395ff(d)(1)-(2); 42 C.F.R. §§ 405.1002, 405.1100. The MAC's decision is a final decision reviewable in federal court. *See* 42 C.F.R. § 405.1136.

Although an initial determination may be revised pursuant to the procedure described above, it may also be revised through an independent process – *i.e.*, through a reopening. Congress authorized a process for reopening, delegating to the agency the authority to fashion regulations. Title 42 U.S.C. § 1395ff(b)(1)(G) provides: "The Secretary may reopen or revise any initial determination or reconsidered determination described in this subsection under guidelines established by the Secretary in regulations." 42 U.S.C. § 1395ff(b)(1)(G).

Pursuant to that authority, the Secretary has promulgated regulations. Under those regulations,

> [a] contractor[2] may reopen and revise its initial determination or redetermination on its own motion --
>
> (1) Within 1 year from the date of the initial determination or redetermination for any reason.
>
> (2) Within 4 years from the date of the initial determination or redetermination for good cause as defined in § 405.986.

42 C.F.R. § 405.980(b).[3] While the regulations thus place limits on when a contractor may reopen, they also provide that a "decision on whether to reopen is binding and not subject to appeal." *Id.* § 405.980(a)(5). The regulations further state that "[a]ctions that are not initial determinations and are not appealable" include a "decision to reopen or not to reopen an initial determination [or] redetermination." *Id.* § 405.926(l).

///

///

---

[2] "Contractor means an entity that contracts with the Federal government to review and/or adjudicate claims, determinations and/or decisions." 42 C.F.R. § 902.

[3] Because the reopenings in the instant case took place in 2007, the Court cites the 2007 version of the relevant regulations and statute.

B.   Review of Hospital Claims

    1.   Initial Determinations and Reopenings

In the instant case, the Hospital provided treatment to three patients between March 2004 and June 2005. *See* Compl. ¶ 26; Def.'s Mot. at 6. Between April 2004 and June 2005, the Hospital was paid by Medicare for the services provided. *See* Compl. ¶¶ 27-29; Def.'s Mot. at 6. In 2007, however, these initial determinations were reopened.

The initial determinations were reopened as a result of the Recovery Audit Contractor ("RAC") demonstration program which was enacted by Congress. The RAC demonstration program was a three-year program (from March 2005 to March 2008) set up by Congress "to detect and correct improper payments [*i.e.*, overpayments or underpayments]."[4] CMS, RAC Status Document FY 2007, *available at* http://www.cms.hhs.gov/RAC/Downloads/2007RACStatusDocument.pdf (last visited on 1/21/2010). The RAC in California, PRG-Schultz, contacted the Hospital in April 2007, stating that there were potential overpayments with respect to the services provided to the three patients at issue and asking for medical records/documentation related to the patients. *See* AR 149-50, 486-87, 822-23. Subsequently, in June 2007, PRG-Schultz notified the Hospital that there had in fact been overpayments. PRG-Schultz also informed the Hospital that it could appeal these determinations. *See* AR 153-54, 489-90, 827-28.

The Hospital did appeal. Eventually, the appeals reached the ALJ level.

    2.   ALJ Review

The ALJ, Bruce J. Kelton, issued his decisions on all three appeals in October 2008. In each of the decisions, Judge Kelton concluded that the services provided were not medically reasonable and necessary. *See* AR 77, 422, 751. Nonetheless, he ordered that the initial determinations be reinstated on the ground that the reopenings by PRG-Schultz – made more than one year after the initial determinations – were impermissible because they lacked good cause.[5] *See* 42 C.F.R. §

---

[4] The RAC program has since been made permanent. *See* 42 U.S.C. § 1395ddd(h).

[5] For purpose of convenience, the Court hereinafter cites only one of the ALJ's decisions. The analysis in all three decisions is the same.

405.980(b) (allowing a contractor to reopen "[w]ithin 4 years from the date of the initial determination or redetermination for good cause as defined in § 405.986").

The ALJ acknowledged that the regulations specified that the "'decision on whether to reopen is final and not subject to appeal.'" AR 65 (quoting 42 C.F.R. § 405.980(a)(5)). But, he added, the regulations also provided for "specific timeframes and good cause-related requirements which must be complied with as a prerequisite to a valid reopening *and revision* of an initial determination." AR 65-66 (emphasis in original; citing 42 C.F.R. §§ 405.841, 405.980, 405.986). According to the ALJ,

> [t]o find that one portion of the regulation (Section 405.980(a)(5)) prohibits administrative appellate scrutiny when it is alleged by an appellant that the timeframe and related good cause requirements of the same regulation (Sections 405.841 and/or 405.980 and 405.986) were violated, renders the regulation itself meaningless. Basic rules of statutory construction, as well as common logic, suggest that such a result cannot have been intended. Moreover, the regulatory timeframe and good cause requirements must be enforceable in some manner, and the blanket preclusion of an appellant's timely and valid request for administrative appellate review of the contractor's compliance with those regulatory requirements constitutes a denial of due process.

AR 66.

The ALJ went on to state that his reading of the regulations

> leads to the conclusion that the CFR provision prohibiting the appeal of a *decision on whether to reopen* merely precludes a party from contending on appeal that, since a favorable determination and payment has already been made, a Medicare contractor should be prevented from subsequently deciding to void the initial payment determination, a decision that can potentially lead to an adverse revision of those particular claims. It does not, however, prevent an appeal of the actual adverse revised determination itself.
>
>     . . . . While a provider may not be able to appeal the contractor's *choice* to reopen, it does have the ability, by virtue of due process requirements and basic statutory construction, to litigate through administrative appeal the act of *revising an adverse determination* resulting from the decision to reopen, including the contractor's purported violation of the regulatory time and good cause requirements imposed by regulation on both the act of reopening and the act o[f] adversely revising an initial determination.

AR 67 (emphasis in original).

In short, under the ALJ's interpretation of the regulation, a decision to reopen simply cannot be challenged at the time that the decision is made. However, once the revised determination is

5

1  made after reopening, the revised determination may be challenged, including the underlying
2  decision to reopen which led to the revised determination.

3          3.     MAC Review

4  On its own motion, the MAC decided to review the three decisions of the ALJ. *See* AR 3.
5  Ultimately, it rejected the ALJ's conclusion regarding appealability. According to the MAC, the
6  provision in the regulations that a "'decision to reopen or not reopen an initial determination'" is not
7  appealable "extends to whether the contractor met good cause standards for reopening." AR 9
8  (quoting 42 C.F.R. § 405.926(l)). In addressing the ALJ's concerns, the Council noted that, as
9  reflected in the legislative history for the regulations, "CMS has expressly stated that the
10 enforcement mechanism for the good cause standard lies within its evaluation and monitoring of
11 contractor performance, not the administrative appeals process." AR 9 (citing 70 Fed. Reg. 11420,
12 11453 (2005)). It also noted that, "in the case of an unfavorable revised determination, due process
13 concerns are addressed by the fact that affected parties have the right to appeal the merits of the
14 revised determination." AR 10.

15 The Hospital subsequently sought judicial review of this decision by the Council.

16         **II.     DISCUSSION**

17 A.     Standard of Review

18 Under *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984), an agency's interpretation
19 of a statute must be affirmed if Congress has made an express delegation to the agency and the
20 agency's construction is not arbitrary, capricious, or manifestly contrary to the statute. *See Johnson*
21 *v. Buckley*, 356 F.3d 1067, 1073 (9th Cir. 2004). In the case at bar, Congress has expressly
22 delegated authority with respect to the matter of reopenings to the Secretary. As noted above, 42
23 U.S.C. § 1395ff(b)(1)(G) provides that "[t]he Secretary may reopen or revise any initial
24 determination or reconsidered determination described in this subsection under guidelines
25 established by the Secretary in regulations." 42 U.S.C. § 1395ff(b)(1)(G). In light of this express
26 delegation, it is not surprising that the Hospital has not challenged the legal validity of any of the
27 reopening regulations at issue.
28

6

The Hospital, however, has challenged the agency's interpretation of those regulations. As indicated above, the agency's basic position is, under 42 C.F.R. §§ 405.980(a)(5) and 405.926(l), a decision on whether to reopen is not appealable and thus may not be challenged even in the context of reviewing the actual revised determination. *See* 42 C.F.R. § 405.980(a)(5) (providing that a "decision on whether to reopen is binding and not subject to appeal"); *id.* § 405.926(l) (providing that "[a]ctions that are not initial determinations and are not appealable" include a "decision to reopen or not to reopen an initial determination [or] redetermination"). The Hospital in turn argues that these regulations simply bar an appeal of a decision on whether to reopen at the time that the decision is made. According to the Hospital, the regulations do not prevent a provider from challenging a decision to reopen once a revised determination is made – including on the basis that the reopening should not have occurred in the first place (*e.g.*, because the reopening lacked good cause).

The threshold question is what level of deference is owed to the Secretary's interpretation of the agency's regulations. Under *Thomas Jefferson University v. Shalala*, 512 U.S. 504 (1994), an agency's interpretation of its own regulations must be given "substantial deference." *Id.* at 512. More specifically,

> the agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation. In other words, we must defer to the Secretary's interpretation unless an alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation.

*Id.* (internal quotation marks omitted).

The Hospital argues that the above principles are applicable only where an agency is interpreting a regulation for which its expertise is required. According to the Hospital, where a matter is not within the agency's expertise, and where the matter involves procedural considerations commonly assigned to the judiciary's field of expertise – *e.g.*, due process and fundamental fairness – then little to no deference should be given to the agency's interpretation.

The Hospital's position is not without some legal support. For example, in *McCuin v. Secretary of Health & Human Servs.*, 817 F.2d 161 (1st Cir. 1987), the First Circuit considered the

7

issue of who could initiate the reopening procedure under the Medicare regulations. In response to the Secretary's argument that his interpretation of his own regulations should be given considerable weight, the court expressed some disagreement, noting that "the deference accorded to an administrative agency's interpretations depends on the extent to which the matters at issue depend peculiarly on the agency's field of expertise." *Id.* at 168 (internal quotation marks omitted). The court noted that "[t]he present case presents issues of the fairness of the way in which legal and factual issues are resolved, the finality of judgment and due process of law," issues which "are clearly legal issues not generally recognized to be within the Secretary's ken and, for obvious reasons, more commonly consigned to the judiciary's field of expertise." *Id.*

In *Powell v. Heckler*, 789 F.2d 176 (3d Cir. 1986), a Social Security case, the Third Circuit took the same approach. There, the court was confronted with the issue of "whether the [agency's] review is limited to the narrow issue raised by claimant or may the [agency] *sua sponte*, and without further notice, review the entire record for the purpose of reversing the ALJ's original disability finding." *Id.* at 178. After ruling in the claimant's favor, the court noted that "[t]his result is by no means intended to disturb or encroach upon the accepted rule that agency interpretations of self-prescribed regulations are to be afforded a considerable presumption of validity." *Id.* at 179.

> [W]e take note that "administrative construction is less potent than it otherwise would be where it does not rest upon matters peculiarly within the administrator's field of expertise." Here, the focus is exclusively on procedural considerations pertaining to notice and fundamental fairness, in other words, *legal* issues not generally recognized to be within the Secretary's ken and, for obvious reasons, more commonly consigned to the judiciary's "field of expertise."

*Id.* (emphasis in original).

While both *McCuin* and *Powell* support the Hospital's position, the Court concludes that the *Thomas Jefferson* standard applies nonetheless. First, Ninth Circuit authority appears contrary to *McCuin* and *Powell*. *Cf. Overend v. Sullivan*, 879 F.2d 673, 675 (9th Cir. 1989) (in a Social Security case, giving deference to the agency's interpretation that, under a regulation, the agency and not just the provider had the authority to reopen even though the regulation referred only to "you"); *Memorial, Inc. v. Harris*, 655 F.2d 905, 912 (9th Cir. 1980) (declining to give agency conclusions deference because "[t]he questions presented here are not demanding of medical or

Medicare program expertise" but rather "involve characterization of ordinary business transactions, interwoven with the parties' expectations and Congress' desire that providers be afforded an opportunity to be reimbursed for the full cost of meeting the medical needs of the elderly and disabled"). There is similar contrary authority outside of this circuit. *See, e.g.*, *Good Samaritan Hosp. Regional Med. Ctr. v. Shalala*, 85 F.3d 1057, 1062 (2d Cir. 1996) (giving deference to agency interpretation of Medicare reopening regulation).

Second, and more significantly, both *McCuin* and *Powell* (as well as the other cases cited above) predate the Supreme Court's decision in *Your Home Visiting Nurse Servs., Inc. v. Shalala*, 525 U.S. 449 (1999). In *Your Home*, the Supreme Court addressed the issue of reopenings under the Medicare statute and regulations with respect to the reimbursement of costs. The provider argued that the Provider Reimbursement Review Board ("PRRB") had appellate jurisdiction to review a FI's refusal to reopen a reimbursement determination. In support of this argument, the provider cited a particular statutory provision, which states that a provider may obtain a hearing before the PRRB if it is dissatisfied with a final determination made by a FI as to the amount of reimbursement due. The Secretary in turn asserted that this provision was not applicable, arguing that a refusal to reopen is not a final determination as to the amount of reimbursement due but rather a refusal to make a new determination. The Supreme Court concluded that the Secretary's reading of the statute was "more natural – but it is in any event well within the bounds of reasonable interpretation, and hence entitled to deference under *Chevron*." *Id.* at 453. In short, the Supreme Court deferred to an agency interpretation of a statute even though it did not appear that any agency expertise was involved in making the interpretation. Given the deference afforded in *Your Home* – which, similar to the instant case, dealt with the matter of reopenings in the Medicare context – the Court concludes that deference should likewise be afforded in the instant case. The fact that the agency in *Your Home* interpreted a statute rather than regulations does not change the import of the Supreme Court's holding. Indeed, logic suggests that an agency's interpretation of its own regulations ought to be afforded as much, if not more, deference than its interpretation of a statute enacted by Congress.

9

B.     Application of *Thomas Jefferson* Standard

As stated above, under the *Thomas Jefferson* standard, a court "must defer to the Secretary's interpretation [of a regulation] unless an alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation." *Thomas Jefferson*, 512 U.S. at 512.

In the instant case, the critical regulation is 42 C.F.R. § 405.980(a)(5), which provides that a "decision on whether to reopen is binding and not subject to appeal." 42 C.F.R. § 405.980(a)(5). According to the agency, this regulation means that a decision to reopen is never appealable – for example, even after a revised determination is made after a reopening, the legitimacy of the reopening cannot be challenged as part of an appeal of the revised determination.

The Hospital disagrees, asserting that the above regulation simply codifies a longstanding rule, as articulated by the Supreme Court in *Your Home* and *Califano v. Sanders*, 430 U.S. 99 (1977), that a decision *not* to reopen is not appealable. According to the Hospital, this does not address the situation of whether a decision *to* reopen is appealable. The Court is not persuaded. The regulation states on its face that a decision on "*whether* to reopen" (emphasis added) is not appealable. Clearly, that encompasses not only a decision *not* to reopen but also a decision *to* reopen. Moreover, 42 C.F.R. § 405.926(l) makes it doubly explicit that "[a]ctions that are not initial determinations and are not appealable" include a "decision to reopen or not to reopen an initial determination [or] redetermination." 42 C.F.R. § 405.926(l).

To the extent the Hospital suggests that another regulation, 42 C.F.R. § 405.1032, demonstrates that a decision on whether to reopen is in fact appealable, the Court does not agree. Section 405.1032 allows for ALJ consideration of a new issue only where "permissible under the rules governing reopening of determinations and decisions (see § 405.980)." 42 C.F.R. § 405.1032(b)(ii). Thus, § 405.1032 incorporates the limits of § 405.980(a)(5).

As a final argument, the Hospital contends that § 405.980(a)(5) is open to the interpretation advocated by the ALJ in the underlying proceedings – *i.e.*, that the regulation simply bars a challenge to the decision to reopen at the time that the decision is made, but not after the revised determination has been made. However, the *Thomas Jefferson* standard dictates that deference must

be afforded to an agency interpretation unless an alternative reading is compelled by the regulation's plain language. The Hospital's interpretation, while not necessarily unreasonable, is not compelled by the plain language of § 405.980(a)(5). In fact, the use of the word "binding" in § 405.980(a)(5) indicates that the agency's interpretation is the more reasonable construction. If a decision on whether to reopen is binding, then it may not be reconsidered even after the revised determination has been made.

Furthermore, the plain language of §§ 405.980(a)(5) and 405.925(l) would be rendered meaningless if the Court were to adopt the Hospital's interpretation. Neither party disputes that there is no procedure by which to appeal a singular decision to reopen on an interlocutory basis. Thus, unless the prohibition on an appeal of a decision to reopen applies to ultimate appeal after the case has been reopened (as in the instant case), that prohibition would be meaningless. Since each word of a statute or regulation normally should be given effect, *see Washington v. Chu*, 558 F.3d 1036, 1045 (9th Cir. 2009), the Secretary's interpretation here is reasonable.

Because the Hospital's interpretation of § 405.980(a)(5) is not compelled by the plain language of the regulation, the only issue remaining is whether an interpretation different from he agency's is supported by "other indications of the Secretary's intent at the time of the regulation's promulgation." *Thomas Jefferson*, 512 U.S. at 512.

Here, the legislative history for § 405.980(a)(5) is favorable to the agency, and not the Hospital. At the time that the regulation was promulgated, the agency made the following comments in response to commenter's concern about how the agency would enforce the provision in the reopening regulations that, after one year, a reopening could be made only if there were good cause.

### h. *Enforcement of the Good Cause Standard*

*Comment:* One commenter recommends that CMS create enforcement provisions for the good cause standard when contractors reopen claims. The commenter says that contractors often ignore the guidelines set out in regulations and manuals and cite a request for medical records as good cause for a reopening, even though the medical records existed at the time the contractor initially reviewed the claim.

*Response:* The regulations require that contractors abide by the good cause standard for reopening actions after one year from the date

> of the initial or revised determination. *CMS assesses a contractor's compliance with Federal laws, regulations and manual instructions during audits and evaluations of the contractors' performance. Thus, the necessary monitoring and enforcement mechanisms are already in place.*

70 Fed. Reg. 11420, 11453 (Mar. 8, 2005) (emphasis added). Notably, the agency did not say that enforcement of the good cause standard could also take place through the administrative appeal process (as the MAC pointed out in its decision). Instead, the agency took the position, consistent with its current interpretation, that the good cause standard is to be enforced through internal procedures, not by a private action via an appeal.

The Hospital points to the fact that the agency also noted, at the time of the promulgation of § 405.980(a)(5), that "[i]t is our longstanding rule that failure to grant a request for reopening is not reviewable," as upheld by the Supreme Court in *Your Home* and *Sanders*. 70 Fed. Reg. 11420, 11453 (Mar. 8, 2005). But this is not dispositive. The agency made this statement in response to a specific concern by a commenter to the proposed regulation that "a party cannot seek review of a determination *not* to grant a request for reopening." *Id.* (emphasis added). The commenter did not appear to express any concern about a determination *to* reopen, and that issue was not addressed in the agency's specific response.

Hence, both prongs of *Thomas Jefferson* are satisfied, and the agency's interpretation of § 405.980(a)(5) must be upheld. This is not to say that the Hospital's position is unreasonable. Typically, appeal processes encompass all pertinent issues, including jurisdictional issues. Furthermore, the argument that the good cause requirement should be privately enforceable is not without some force. The limiting of reopenings made after one year to situations where there is good cause appears to be designed for the benefit of the providers – *i.e.*, to provide them with some finality and stability. *See McCuin*, 817 F.2d at 172 (noting that "[t]he reopening power claimed by the Secretary takes away the finality that adjudication normally affords"). Notably, in deciding whether to imply a private right of action, a court considers as one factor whether the plaintiff is "one of the class for whose especial benefit the statute was enacted." *Cort v. Ash*, 422 U.S. 66, 78 (1975) (noting that, in deciding whether to imply a private right of action, one factor to consider is whether the plaintiff is "one of the class for whose especial benefit the statute was enacted").

12

1  Finally, allowing an appeal of a decision to reopen – as opposed to a decision not to reopen – does
2  not implicate the same policy concerns discussed in *Your Home* and *Sanders* where it was the
3  provider trying to reopen and thus prevent finality.
4  Nevertheless, at the end of the day, the *Thomas Jefferson* standard is applicable and therefore
5  the Court defers to the Secretary's interpretation of the reopening regulations. Accordingly, the
6  Court concludes that there was no violation of the Administrative Procedures Act ("APA") when the
7  agency refused to consider as part of the administrative process whether the RAC PRG-Schultz
8  improperly reopened the Medicare claims at issue.
9  In addition, the Court concludes that the Hospital's procedural due process rights were not
10 violated. The Hospital's due process claim in the instant case is based on the alleged failure of the
11 agency to follow its own regulations. However, as discussed above, the agency did not fail to follow
12 its own regulations. Nor can the Court discern any substantial deprivation that would implicate a
13 substantive due process violation. As the MHC pointed out, the Hospital had the right to contest the
14 substantive merits of the redetermination. The only "right" it was denied here was the required
15 showing of good cause to reopen after one year. Yet there is little doubt that the Secretary could
16 have simply enacted through regulation a simple four-year limitation period omitting any good cause
17 requirement without violating due process. The Hospital provides no authority for the proposition
18 that it had an independent constitutional right to a particular limitations period or one which
19 embodied the good cause provision in 42 C.F.R. § 405.980(b).
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

13

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Hospital's motion for summary judgment and **GRANTS** the agency's cross-motion for summary judgment. The Clerk of the Court is directed to enter judgment in favor of the agency in accordance with this opinion and close the file in this case.

This order disposes of Docket Nos. 30 and 31.

IT IS SO ORDERED.

Dated: March 24, 2010

_____
EDWARD M. CHEN
United States Magistrate Judge